IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY A. SIMMONS,
        Plaintiff,

vs.                                                          Case No.:  3:15cv163/MCR/EMT

WILLIAM EDDINS, et al.,
        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate of the Florida Department of Corrections proceeding pro se and in forma pauperis, commenced this case by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1).  Now before the court is Plaintiff's Second Amended Complaint (ECF No. 17).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of some of Plaintiff's federal claims against some of the Defendants is warranted.

I.      PLAINTIFF'S ALLEGATIONS

In Plaintiff's Second Amended Complaint, the operative pleading, he names eleven Defendants:  William Eddins, State Attorney for the First Judicial Circuit of Florida; Bridgette Jensen, Assistant State Attorney; David Morgan, Sheriff of Escambia County;  Michael Runge and Nicole Coxwell, deputies with the Escambia County Sheriff's Office ("ECSO"); Lise Dixon and Stephen Cappas, supervisors with the ECSO; Brandi Smith, an investigator with the Florida Department of Children and Family Services ("DCF"); Elise Dawson, a supervisor with DCF; Aayana McCreary, an investigator with the Child Protection Team ("CPT"), a program of the Florida Department of Health; and Ada Dixon, a supervisor with CPT (ECF No. 17 at 1–3).[1] Plaintiff sues Sheriff Morgan in his official capacity, and the remaining Defendants in their individual capacities (*id.* at 6).

Plaintiff alleges the following facts in support of his claims (ECF No. 17 at 6–11).  On February 27, 2013, at approximately 9:00 a.m., DCF Investigator Smith investigated a report that the 22-month old child of Plaintiff's girlfriend was in the hospital, and that the child's condition may have been caused by child abuse (*id.*). Smith interviewed the girlfriend's other two children, aged 3 and 7, without their legal guardian present (*id.*).[2] Plaintiff claims that Smith's interviewing the children without

---

[1] The page references used in this Report and Recommendation reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[2] In a prior complaint, Plaintiff alleged that Smith reported that the 3-year-old told her that Plaintiff "threw" the 22-month-old child "into the bed" (*see* ECF No. 8).

Case No.:  3:15cv163/MCR/EMT

the presence of their legal guardian was illegal (*id.*).  He alleges DCF Supervisor

Dawson failed to intervene in the allegedly illegal interview (*id.* at 9).

Plaintiff alleges that approximately one hour after Smith's interview, Deputy

Coxwell interviewed the 3 and 7-year-old children (ECF No. 17 at 8–9).  Plaintiff

claims that this interview was also illegal, because the children's legal guardian was

not present (*id.*).[3]  Plaintiff alleges ECSO Supervisor Cappas failed to intervene in the

allegedly illegal questioning (*id.* at 10–11). Plaintiff alleges he was handcuffed,

detained, and questioned at the hospital (*id.* at 6).  He alleges Deputy Runge then

arrested him on one charge of aggravated child abuse and two charges of cruelty

toward a child, based solely upon the statements of the 3-year old, and without any

physical evidence or knowledge of the actual cause of the child's condition (*id.* at 6–7,

9).  Plaintiff alleges ECSO Supervisor Dixon failed to intervene in the arrest (*id.* at

11).  He alleges Sheriff Morgan "permitted and allowed" the arrest (*id.* at 6).  Plaintiff

alleges he was detained at the jail (*id.* at 7).

Plaintiff further alleges that on February 28, 2013, the day after his arrest, CPT

Investigator McCreary interviewed the 3 and 7-year old children on videotape without

---

[3] In a prior complaint, Plaintiff alleged that Deputy Coxwell reported that the 3-year-old told her that Plaintiff choked the 22-month-old child and then threw her down into a bed, but the 7-year-old denied that this happened (*see* ECF No. 8).

the presence of their legal guardian (ECF No. 17 at 10).  Plaintiff alleges that during

the interview, neither of the children stated that they saw him hurt the 22-month-old

child; instead, the 7-year old "only stated she was told" (*id.*).  Plaintiff alleges CPT

Supervisor Dixon authorized the allegedly illegal interview (*id.*).

Plaintiff alleges the 22-month old child died on March 12, 2013 (ECF No. 17

at 7).  He alleges on March 19 and 20, 2013, State Attorney Eddins and Assistant State

Attorney Jensen dropped the two charges of cruelty toward a child, and added a

charge  of second degree murder in Escambia County Circuit Court, Case No. 2013-

CF-1009 (*id.*).  Plaintiff alleges Eddins and Jensen based their decision upon an

autopsy report of Dr. Minyard that was provided to Jensen on March 19, 2013, but not

"authetically [sic] completed" until August 28, 2013, when it was determined that the

22-month-old child died of natural causes, specifically, an infection of the central

nervous system (*id.* at 7–8).  Plaintiff alleges he was detained in jail until September

24, 2013, when the charges were dropped (*id.* at 8).  He alleges that despite the

dropping of criminal charges against him, DCF Investigator Smith still sought, and

apparently obtained, an injunction prohibiting contact between Plaintiff and the 3 and

7-year old children (*id.*).

Plaintiff alleges his arrest and detention caused him pain and suffering,

emotional distress, and loss of income (ECF No. 17 at 11).    He claims that

Defendants negligently, wilfully, knowingly, wrongfully, and maliciously caused him

to be falsely arrested and maliciously prosecuted, in violation of the Fourth, Sixth, and

Fourteenth Amendments, because his arrest, detention, and prosecution were based

upon illegally obtained statements of the children, and there was no physical evidence

that he caused the child's injuries or death (ECF No. 17 at 11–12).  He additionally

brings state law claims of negligence, libel, and slander (*id.* at 12).  As relief, he seeks

monetary damages, expungement of his arrest record, removal of the allegations from

DCF's "system," removal of the injunction prohibiting his contact with the children,

a letter of apology, and an announcement to the media (*id.* at 12).

II.   ANALYSIS

Because Plaintiff is proceeding in forma pauperis, the court may dismiss a claim

if satisfied that it is "(i) frivolous or malicious;  (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  Dismissals for failure to state

a claim are governed by the same standard as Federal Rule of Civil Procedure

12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations

of the complaint are taken as true and are construed in the light most favorable to

Plaintiff. Davis v. Monroe Cnty. Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).

To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v.

Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

A claim is plausible on its face where "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a

defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is

"a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The

pleader is not entitled to relief "where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P.

8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a

factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions"

that "amount to nothing more than a formulaic recitation of the elements" of a claim

"are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and

citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

A.    Section 1983 claims against DCF and CPT Defendants

Plaintiff's factual allegations fail to state a plausible claim of false arrest or malicious prosecution with regard to the DCF Defendants and the CPT Defendants. The elements of a claim of false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause.  *See* Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990).  A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  The existence of probable cause to arrest is based on objective standards.  Von Stein, 904 F.2d at 578 (citations omitted).  Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later

acquitted or released does not by itself mean that probable cause was initially lacking. Marx v. Gumbinner, 905 F.2d 1503, 1507 (11th Cir. 1990); Von Stein, 904 F.2d at 578 n.9.

Additionally, to establish § 1983 liability, a plaintiff must show "proof of an affirmative causal connection" between a government actor's acts or omissions and the alleged constitutional violation, which "may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  The plaintiff must thus show that the defendant actually made the arrest (or, where the arrest was pursuant to a warrant, that the defendant swore out the affidavit supporting the arrest warrant), or that the defendant was part of the arresting officer's chain of command authorizing the arrest.  *See* Carter v. City of Melbourne, Fla., 731 F.3d 1161, 1171 (11th Cir. 2013) (affirming district court's dismissal of plaintiff's claim for municipal liability against the City, and claims for individual liability against the city police chief and city manager, for false arrest, imprisonment, and malicious prosecution, where the evidence did not suggest a causal connection between either of the individual defendant's action and plaintiff's arrest; a law enforcement agency separate from the police department conducted its own investigation and independently decided to arrest and detain plaintiff; and there was no evidence showing that either

of the individual defendants caused the agency to falsely arrest, detain, or charge

plaintiff by knowingly supplying false information or placing undue pressure on the

arresting agency); Brown v. City of Huntsville, Ala., 608 F.3d 724, 736–37 (11th Cir.

2010) (defendant officer who did not actually arrest plaintiff and had no supervisory

control over the officer who did, was entitled to qualified immunity on plaintiff's §

1983 claim of false arrest); *see also, e.g.*, Elmore v. Fulton Cnty. School Dist., 605 F.

App'x 906, 917 (11th Cir. 2015) (unpublished but recognized for persuasive

authority) (affirming district court's dismissal of educator/arrestee's claim against

School District's principal for false arrest, where principal was not personally

involved in educator's arrest; facts were not sufficient to support inference that

principal was, in fact, supervisor of School District's police officer who swore out

affidavit in support of arrest warrant; and facts failed to show that, even if principal

was officer's supervisor, principal directed arresting officer to act unlawfully or knew

that officer would act unlawfully) (citing Keating v. City of Miami, 598 F.3d 753, 762

(11th Cir. 2010)).

   To establish a § 1983 malicious prosecution claim, the plaintiff must prove two

things:  (1) the elements of the common law tort of malicious prosecution; and (2) a

violation of his Fourth Amendment right to be free from unreasonable seizures.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004); Wood v. Kesler,

323 F.3d 872, 881 (11th Cir. 2003).[4]  As to the first prong, the common law tort of

malicious prosecution includes the following six elements:

> (1) an original judicial proceeding against the present plaintiff was
> commenced or continued; (2) the present defendant was the legal cause
> of the original proceeding; (3) the termination of the original proceeding
> constituted a bona fide termination of that proceeding in favor of the
> present plaintiff; (4) there was an absence of probable cause for the
> original proceeding; (5) there was malice on the part of the present
> defendant; and (6) the plaintiff suffered damages as a result of the
> original proceeding.

Kingsland, 382 F.3d at 1234.

Here, Plaintiff's factual allegations do not plausibly suggest a basis for holding

DCF Investigator Smith, DCF Supervisor Dawson, CPT Investigator McCreary, or

CPT Supervisor Dixon liable for false arrest.  Plaintiff admits that the CPT

Defendants' conduct (i.e., interviewing the children) occurred after Plaintiff was

arrested.  As for the DCF Defendants, Plaintiff does not allege that either of the DCF

Defendants actually arrested him; instead, he alleges ECSO Deputy Runge effected

the arrest.  Further, none of the DCF or CPT Defendants was Deputy Runge's

supervisor or part of the chain of command at the ECSO; indeed, the ECSO conducted

its own investigation and independently decided to arrest and detain Plaintiff.

---

[4] "When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state." Wood, 323 F.3d at 882 and n.17.

Additionally, Plaintiff does not allege facts suggesting that any of the DCF or CPT

Defendants made perjurious or recklessly false statements to the ECSO (for example,

in reporting what the children said during the investigative interviews), or that they

placed undue pressure on the ECSO.  *See* <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1553 (11th

Cir. 1994) (the Constitution prohibits an officer form making perjurious or recklessly

false statements in support of a warrant, but this rule does not apply to negligent

misrepresentations or omissions (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 156,

165–71, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)).

Similarly with regard to Plaintiff's malicious prosecution claims, the State

Attorney's Office independently instituted and continued the prosecution of Plaintiff;

neither the DCF Defendants nor the CPT Defendants were the legal cause of

Plaintiff's criminal prosecution.  Further, Plaintiff's factual allegations do not suggest

that any of the DCF or CPT Defendants made perjurious or recklessly false statements

to the State Attorney's Office, or placed undue pressure on that Office to prosecute

Plaintiff.

Moreover, although Plaintiff contends that DCF Investigator Smith's and CPT

Investigator McCreary's interviews of the children were illegal, because they were

conducted without the children's legal guardian present, there is no constitutional due

process right to have child witnesses, in a child abuse investigation, interviewed in a

particular manner or pursuant to a certain protocol.  *See* <u>Devereaux v. Perez</u>, 218 F.3d

1045, 1053 (9th Cir. 2000); *see also* <u>Myers v. Morris</u>, 810 F.2d 1437 (8th Cir. 1987).

Plaintiff's factual allegations fail to state a plausible claim for relief against the

DCF and CPT Defendants for false arrest, malicious prosecution, and "deprivation of

freedom."  Therefore, Plaintiff's § 1983 claims against these Defendants should be

dismissed, pursuant to § 1915(e)(2)(B)(ii).  *See, e.g.*, <u>Fleming v. Barber</u>, No.

3:07cv279/MCR/MD, 2008 WL 2790194, at *6 (N.D. Fla. July 17, 2008)

(unpublished) (child protective services investigator was entitled to qualified

immunity on plaintiffs' Fourth and Fourteenth Amendment claims arising from search

and seizure of plaintiffs' property and related arrest and prosecution for sexual battery

of a minor, because at the time of the investigator's conduct, it was not clearly

established in the Eleventh Circuit that in a sexual abuse investigation soliciting a nine

year old child's uncorroborated but otherwise facially trustworthy statement that was

later cited in an affidavit in support of a search warrant, violated the Constitution)

(citations omitted).

B.     <u>Section 1983 claims against State Attorney Eddins and ASA Jensen</u>

Plaintiff's § 1983 claims against State Attorney Eddins and ASA Jensen are

subject to dismissal under the doctrine of prosecutorial immunity.  In <u>Imbler v.

Pachtman</u>, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), the Supreme Court

considered whether traditional common-law immunities for prosecutors, which derived from immunities recognized for judges, applied to civil cases brought under 42 U.S.C. § 1983. The Supreme Court concluded that they did. *Id.*, 424 U.S. at 427–28 (citation omitted). The Court has explained that the common law gives absolute immunity in § 1983 actions for activities that are "'intimately associated with the judicial phase of the criminal process.'" Van de Kamp v. Goldstein, 555 U.S. 335, 341, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009) (quoting Imbler, 424 U.S. at 430); *accord* Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).

"[A] functional approach has evolved to determine whether executive branch public officials should be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials." Jones, 174 F.3d at 1282. This functional approach looks to the nature of the function performed, not to the identity of the person who performed it. *See* Buckley v. Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Under this functional analysis, executive branch officials are entitled to absolute immunity for certain functions intimately associated with the judicial process. Van de Kamp, 555 U.S. at 343.

Subsequent Supreme Court decisions established outer bounds on what activities qualify for prosecutorial immunity and to which individuals it applies.

Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case.  *See* Imbler, 424 U.S. at 431.  A prosecutor is immune from malicious prosecution.  *See* Malley v. Briggs, 475 U.S. 335, 342–43, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

Applying these principles, the Eleventh Circuit has emphasized that, "[a] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate."  Jones, 174 F.3d at 1281.  Such absolute immunity "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  *Id.* (quotation marks omitted); *accord* Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002).  Prosecutors have absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate . . . complaints about the prison system, [and] threatening . . . further criminal prosecutions . . . ."  Hart v. Hodges, 587 F.3d 1288, 1295 (quotation marks and citations omitted).

Here the conduct of State Attorney Eddins and ASA Jensen in initiating and continuing the prosecution of charges against Plaintiff concerned their functions as advocates for the State.  Therefore, they are entitled to prosecutorial immunity from

Plaintiff's § 1983 claims.  Accordingly, Plaintiff's § 1983 claims against Eddins and Jensen should be dismissed, pursuant to § 1915(e)(2)(B)(iii).

C.       Section 1983 claims against Sheriff Morgan

Plaintiff sues Sheriff Morgan in his official capacity only (*see* ECF No. 17 at 6).  To impose § 1983 liability on a municipality or officer in his official capacity, a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.  *See* McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  A policy is a decision officially adopted by the municipality, or created by an official of such rank that the official could be said to be acting on behalf of the municipality. *See* Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997).  A custom is a practice that is so settled and permanent that it takes on the force of law.  *Id.*

Here, the only factual allegation against Sheriff Morgan is that he "permitted and allowed" Plaintiff to be arrested.  This allegation does not support an inference that Plaintiff's arrest, allegedly without probable cause, was caused by a policy or practice of the ECSO.  Therefore, Plaintiff's § 1983 claim against Sheriff Morgan should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's § 1983 claims against Defendants Brandi Smith, Elise Dawson, Aayana McCreary, Ada Dixon, and David Morgan be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

2.      That Plaintiff's § 1983 claims against Defendants William Eddins and Bridgette Jensen be **DISMISSED with prejudice** for seeking monetary relief against a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); and

3.      That this matter be referred to the undersigned for further proceedings.

At Pensacola, Florida this <u>14</u><sup>th</sup> day of December 2015.

/s/ *Elizabeth M. Timothy*

**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No.:  3:15cv163/MCR/EMT